UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

William M. Smith                                Civil Action No. 6:03-CV-1922

versus                                            Judge Tucker L. Melançon

Enervest Operating, L.L.C., et al.           Magistrate Judge Mildred E. Methvin

**MEMORANDUM RULING**

     Before the Court are a Motion for Summary Judgment [Rec. Doc. 61] filed by third-party defendant Gaubert Oil Company, Inc., a memorandum in opposition [Rec. Doc. 64] filed by Enervest Operating, L.L.C. and Steadfast Insurance Company, Gaubert's reply [Rec. Doc. 67], Enervest's supplemental opposition [Rec. Doc. 73], and Enervest's second supplemental opposition [Rec. Doc. 80]. Also before the Court are a Cross-Motion for Summary Judgment [Rec. Doc. 77] filed by defendants and third-party plaintiffs Enervest Operating, L.L.C. and Steadfast Insurance Company, a memorandum in opposition [Rec. Doc. 81] filed by Gaubert Oil Company, Inc., and Enervest's reply [Rec. Doc. 84]. For the following reasons, Gaubert Oil Company's motion for summary judgment will be granted, and the cross-motion for summary judgment filed by Enervest Operating and Steadfast Insurance will be denied.

## I. Background

The instant motions are the result of plaintiff William Smith's demand for relief from Enervest Operating Company ("Enervest" hereafter) for injuries he allegedly sustained while working for Baker Energy Incorporated as an operator mechanic on Tank Battery #2, a gas compression platform owned and operated by Enervest located in Cote Blanche Island Field in the Louisiana territorial waters of the Vermilion Bay. (*Complaint* ¶¶ 2-4, 7.) At the time of the accident, Enervest and Gaubert Oil Company ("Gaubert" hereafter) were parties to a Master Service Contract ("MSC" hereafter) whereby Gaubert was to provide Enervest with work and/or services in connection with specific purchase orders. (*Gaubert's Motion*, 3.)

On September 6, 2002, Smith was working on Tank Battery #2, assisting in the offloading of lube oil from a tug and barge vessel onto the platform, when he fell eight feet from a ladder onto the concrete deck of the platform after the rung on which he was standing gave way, injuring himself. (*Complaint* ¶¶ 5-6.) On September 2, 2003, Smith filed suit in state court against Enervest claiming personal injuries as a result of his accident. (*See Complaint*.) Enervest subsequently removed the suit to federal court [Rec. Doc. 3], after which Smith amended his original complaint to add Steadfast Insurance Company ("Steadfast" hereafter), Enervest's insurer, as a co-defendant [Rec. Doc. 32].

On October 20, 2004, pursuant to a defense and indemnity provision contained within the Enervest-Gaubert MSC, Enervest and Steadfast filed a third-party complaint against Gaubert and its insurer, Great American Insurance Company [Rec. Doc. 49]. Enervest asserts that Gaubert is under an obligation to defend and indemnify Enervest for any liability to Smith. (*Third Party Complaint* ¶ 11.) Smith subsequently settled all claims against Enervest. Gaubert has stipulated to the reasonableness of the settlement amount. (*Enervest Cross-Motion for Summary Judgment*, 2.)

Now before the Court are cross-motions for summary judgment filed by Enervest and Gaubert concerning the enforceability of the defense and indemnity provision in the MSC [Rec. Docs. 61 & 77]. Enervest contends that the provision is part of a maritime contract, and therefore fully enforceable under general maritime law. (*Enervest's Opposition*, 2). Gaubert argues that the MSC is not a maritime contract, and that because the accident occurred over Louisiana territorial waters, Louisiana state law applies, thus rendering the defense and indemnity provision contained in the MSC null and void pursuant to the Louisiana Oilfield Anti-Indemnity Act ("LOAIA"), codified as Louisiana Revised Statute 9:2780.

## II. *Summary Judgment Standard*

A motion for summary judgment shall be granted if the pleadings, depositions

and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994)(en banc). When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim. *Celotex Corp.,* 477 U.S. at 324.

Once the movant produces such evidence, the burden shifts to the respondent to direct the attention of the court to evidence in the record sufficient to establish that there is a genuine issue of material fact requiring a trial. *Id.* The responding party may not rest on mere allegations made in the pleadings as a means of establishing a genuine issue worthy of trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Little*, 37 F.3d at 1075. If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 322. Before it can find that there are no genuine issues of material fact, however, the court must be satisfied that no reasonable trier of fact could have found for the non-moving party. *Id.*

*III. Analysis*

A. <u>Applicable Law</u>

The Enervest-Gaubert MSC contains a choice of law provision which states in pertinent part that:

> "The general maritime law of the United States shall govern this Contract. If maritime law is held inapplicable the laws of the State of Texas shall govern this Contract."

(*Gaubert's Motion*, 4, Ex. 2, Section 13.1.) The parties disagree over whether the MSC constitutes a maritime contract, and which jurisdiction's laws apply as a result of the above-cited choice of law clause.

As a threshold matter, the Court must decide whether the Enervest-Gaubert MSC qualifies as a maritime contract. If so, general maritime law will be applicable, the Court will be bound to enforce the above-cited choice of law provision, and the defense and indemnity provisions contained in the MSC will be enforceable as written, since indemnity agreements, even those which seek to indemnify a party for its own negligence, are enforceable under admiralty law. *See Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329 (5th Cir.1981); s*ee also Johnson v. Seacor Marine Corp.*, 404 F.3d 871 (5th Cir.2005). If the Court finds that the MSC is not a maritime contract, the choice of law provision is not enforceable if the forum state's (Louisiana) conflict laws determine that enforcement would violate an important

5

public policy of the state. *See id.* The Louisiana legislature, in passing the Louisiana Oilfield Anti-Indemnity Act ("LOAIA" hereafter), La.R.S. 9:2780, declared indemnity provisions which purport to indemnify a party for its own negligence null and void and against the public policy of Louisiana. Thus, whether the indemnity claim is enforceable turns on the nature of the MSC in the first instance, and the applicability of the LOAIA in the second. *Jones v. Berwick Bay Oil Co., Inc.*, 697 F.Supp. 260, 265 (E.D.La.,1988).

Enervest argues that the MSC is clearly maritime in nature because it arranged for the sale and delivery of lube oil, via barge, over navigable waters. (*Enervest Opposition*, 2.) Gaubert makes the opposite assertion, arguing that Enervest's purchase of lube oil, governed by a specific work order pursuant to the MSC, is clearly a *non*-maritime activity that only incidently involved transportation of the cargo, once bought and sold, over navigable waters. (*Gaubert's Motion for Summary Judgment*, 5.)

The Fifth Circuit has held that whether a particular contract is maritime in nature depends on the subject matter of the contract, not on the situs of its performance or execution. *Theriot v. Bay Drilling Corp.*, 783 F.2d 527, 538 (5th Cir.1986). Where the MSC at issue is a "blanket," or preliminary agreement, to be supplemented by work orders calling for the performance of specific services, as in

6

the instant case, the Fifth Circuit has instructed district courts that the blanket agreement and the specific work order at issue must be construed together to determine whether maritime law is applicable. *Davis & Sons, Inc. v Gulf Oil Corp.*, 919 F.2d 313, 315 (5th Cir.1990). Courts should first analyze a contract by looking at its historical treatment in the relevant jurisprudence, and if that treatment is not sufficiently clear, then by inquiring into the facts surrounding the contract. *See id*. at 316.

A review of the relevant jurisprudence did not reveal any cases dealing specifically with the sale and delivery of lube oil, but did indicate that a contract for the sale of goods is historically treated as a non-maritime contract if the principal obligation of the contract is the act of sale, and if the fact that the goods have to be delivered via navigable waters is incidental, such that the transportation is not the primary object of bargaining. *See Thurmond v. Delta Well Surveyors*, 836 F.2d 952 (5th Cir.1988); *Lucky-Goldstar Int'l, Inc. v. Phibro Energy Int'l, Ltd.*, 958 F.2d 58 (5th Cir.1992).

After considering the relevant historical jurisprudence, the court must consider the facts surrounding the contract. *Davis* set out a six-part test to determine how a contract should be characterized: "(1) what [did] the specific work order in effect at the time of injury provide? (2) what work did the crew assigned under the work order

actually do? (3) was the crew assigned to work aboard a vessel in navigable waters? (4) to what extent did the work being done relate to the mission of that vessel? (5) what was the principal work of the injured worker? and (6) what work was the injured worker actually doing at the time of injury?" *Id*.

As to the first *Davis* factor, the MSC combined with the specific work order arranged for the sale of lube oil by Gaubert to Enervest, and charged Gaubert with the delivery of the oil via barge to a stationary gas compression platform located at Cote Blanche Island Field. (*See Enervest's Opposition*, Exhibits A and B.) While the contract no doubt contemplated the use of a barge and/or tug, as well as a tankerman to drive the barge, the principal obligation of the contract - to deliver oil - is non-maritime. The mere inclusion of maritime aspects in a mixed contract does not, without more, bring non-maritime obligations within the pale of admiralty law. An agreement to transport people or supplies in a vessel to and from a well site on navigable waters is clearly a maritime contract. *Hale v. Co-Mar Offshore Corp.*, 588 F. Supp. 1212, 1215 (W.D.La.1984); *see also Smith v. Pan Air Corp.*, 684 F.2d 1102, 1111 (5th Cir.1982). That the contract in this case merely contemplated in part the use of instruments of admiralty (i.e. a barge to transport the oil over navigable waters) is not sufficient to qualify the contract as maritime in nature. The fact that the contract relates to offshore oil and gas exploration is not by itself a sufficient basis

for the exercise of admiralty jurisdiction. *Laredo Offshore Constructors, Inc. v. Hunt Oil Co.*, 754 F.2d 1223, 1232 (5th Cir.1985). Oil and natural gas extraction from the sea bottom may itself be considered a maritime activity, however the Fifth Circuit has delineated carefully that a contract may not bear the necessary relationship to maritime concerns for the exercise of admiralty jurisdiction solely because it involves work on or around a platform. *See id.*

With respect to the remainder of the *Davis* factors, the Gaubert work crew was assigned to deliver and unload the oil. The plaintiff in this case was working as a mechanic on a fixed gas compression platform, and was ascending a ladder attached to a storage tank in order to help prevent the lube oil from overflowing when he was injured. (*Gaubert Motion*, 6.) The Fifth Circuit has determined that such a platform is not considered a "vessel," and a mechanic working on one is not a "seaman." *See Blanchard v. Engine & Gas Compressor Services, Inc.*, 575 F.2d 1140 (5th Cir. 1978); *see also Barrios v. Engine & Gas Compressor Services, Inc.*, 669 F.2d 350 (5th Cir., 1982).

Applying the above principles to the case *sub judice,* the Court concludes that the Enervest-Gaubert MSC is non-maritime in nature, and therefore the choice of law provision contained in the MSC will not be enforceable if Louisiana's conflict laws determine that enforcement would violate an important public policy of the state.

9

B. Conflict of Laws

The Court now must consider whether the choice of law provision in the MSC between Enervest and Gaubert, which selects Texas law to govern the provisions of the contract in the event that maritime law is found inapplicable, is enforceable under Louisiana's conflict of laws analysis. The provisions applicable to the choice of law provision in this case are Articles 3540,[1] 3537,[2] and 3515[3] of the Louisiana Civil Code. Article 3537 provides that the governing law is the law of the state whose "policies would be most seriously impaired if its law were not applied to that issue,"

---

[1] "All other issues of conventional obligations are governed by the law expressly chosen or clearly relied upon by the parties, except to the extent that law contravenes the public policy of the state whose law would otherwise be applicable under Article 3537."

[2] "Except as otherwise provided in this Title, an issue of conventional obligation is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue. That state is determined by evaluating the strength and pertinence of the relevant polices of the involved state in light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the polices referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multi-state commercial intercourse, and of protecting one party from undue imposition by the other."

[3] "Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue. That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international system, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state."

and that state is determined by weighing the relative strength and pertinence of the competing states' policies. As Comment (c) to Article 3537 explains, the state whose law should apply is the state that "in light of its connection to the parties and the transaction and its interests implicated in the conflict, would bear the most serious legal, social, economic, and other consequences 'if its law were not applied' to the issue at hand."

The Fifth Circuit has conducted this choice of law analysis in a prior case, where the contract at issue included almost an identical provision to the one currently before the Court. *See Roberts v. Energy Dev. Corp.*, 235 F.3d 935, 941 (5th Cir.2000). The *Roberts* case is sufficiently similar to this one to be controlling. In balancing Louisiana's anti-indemnification policy with the countervailing state policy of upholding contracts freely and voluntarily entered into by parties, the Fifth Circuit held that:

> "[W]ith respect to the policy of protecting one party from undue imposition by the other, Louisiana's commitment to protecting its sub-contractors from the "inequity" foisted on such entities by indemnity provisions in work agreements pertaining to wells for oil and gas, is more emphatic than that of any respective policies of Texas. The force of Louisiana's public policy disfavoring indemnity agreements, as stated in the LOIA, is unquestionably very strong. *See Matte*, 784 F.2d at 631. (Citations omitted). The language of the LOIA makes it clear that Louisiana has a very strong policy against allowing its oil and gas well sub-contractors to be manipulated by well owners and operators who would foist the burden of indemnification on them through work agreements, and subjecting these subcontractors to contrary laws permitting

11

indemnification provisions in other jurisdictions."

Given that one of the contracting parties in this case, Gaubert, is a Louisiana domiciliary; that Gaubert is the type of sub-contractor for whom the Louisiana legislature specifically contemplated providing protection with the anti-indemnification policy announced in the LOAIA; that the nature and purpose of the agreement therefore directly implicate the LOAIA policy; that the work order at issue was generated from and pertained to work to be performed exclusively in Louisiana's territorial waters; that no work would have been performed under the MSC, combined with the specific work order, in the territorial waters of Texas; that the plaintiff is a Louisiana resident; that the injury giving rise to the underlying insurance obligation occurred in Louisiana; and considering the policy of protecting one party from undue imposition by the other, this Court concludes that the choice of law provision in the Enervest-Gaubert MSC is unenforceable, and that pursuant to Louisiana conflicts law, the laws of Louisiana govern this case. Accordingly, the Court must determine whether the Louisiana Oilfield Anti-Indemnity Act nullifies Gaubert's defense and indemnity obligations to Enervest.

C. Applicability of LOAIA

"Louisiana protects oilfield contractors from oil companies who press for master service contracts requiring contractors to provide indemnification even when

the oil company is at fault." *Hodgen v. Forest Oil Corp.*, 115 F.3d 358, 359-360 (5th Cir.1997). "The LOAIA therefore nullifies indemnity agreements which protect the principal against its own fault at the expense of the contractor if the indemnity provisions are part of an agreement pertaining to an oil or gas well." *Roberts v. Energy Development Corp.*, 104 F.3d 782, 784 (5th Cir.1997). To determine the applicability of the LOIA, courts employ a two-part test. *See Transcontinental Gas v. Transportation Insurance Company*, 953 F.2d 985, 991 (5th Cir.1992). "First, the court assesses whether the agreement 'pertains to a well.'" *In re Complaint of John E. Graham & Sons*, 210 F.3d 333, 341 (5th Cir.2000). Once a "court concludes an agreement pertains to a well, the court than asks whether the agreement involves operations related to the exploration, development, production, or transportation of oil, gas, or water. *Id.*

The "threshold requirement for applicability of the [LOIA] is that the contract under scrutiny pertain to a well." *Transcontinental Gas*, 953 F.2d at 991. "If the contract does not pertain to a well, the inquiry ends." *Id.* Whether a contract "pertains to a well" is a fact intensive inquiry analyzed on a case-by-case basis. *Roberts*, 104 F.3d at 784. The Court finds that the MSC and specific work order, construed together, pertain to a well. The contract dealt with Gaubert's obligation to Enervest to sell and deliver lube oil to a tank battery designated well located in "Cote

Blanche Island Oil and Gas Field." (*Gaubert Motion*, Exhibit 6.) The platform on which plaintiff's injury occurred was directly connected to a gas-lift well. (*See id.*) The Court also finds that the contract satisfies the "related to" prong of the *Transcontinental* analysis. Because the sale and delivery of lube oil are essential to the operation of a gas compression platform such as Tank Battery #2, a contract for such is related to the production of oil and gas within the scope of the LOAIA.

Based on the foregoing, the Court finds that the Enervest-Gaubert MSC is governed by Louisiana law and the provisions of the LOAIA. Furthermore, the Court finds that the indemnity provision contained within the MSC is void and unenforceable pursuant to the LOAIA as it pertains to a well and is related to the production or exploration of minerals. Accordingly, Gaubert's motion for summary judgment will be granted, and Enervest's cross-motion for summary judgment will be denied.

## IV. Conclusion

For the foregoing reasons, the Court will grant Gaubert's motion for summary judgment, deny Enervest's cross-motion for summary judgment, and dismiss Enervest's third-party complaint against Gaubert.